[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to the court in three counts claiming a cause of action in breach of an oral agreement and unjust enrichment.
FACT
In July of 1987, the parties to this action met at a party in Connecticut attended by the defendant, the plaintiff's best friend and other mutual acquaintances. At the time the plaintiff, a stock broker in Denver, Colorado, suggested to his acquaintances that they might be interested in investing in some speculative stocks which were making considerable gains. The plaintiff subsequently opened an account for his friend, Jeffrey Thurston, who was also the defendant's brother-in-law.
The plaintiff and defendant began dating during July and CT Page 3327 August of 1987, and began an intense courtship. During this period the defendant visited the plaintiff in Denver, Colorado and decided to open a stock trading account which the plaintiff would manage for her.
In August of 1987, the defendant sent a check to the brokerage house to transact a trade for the purchase of stock named Miller Diversified. That check sent by the defendant to the brokerage house was returned for insufficient funds. In order to avoid a sellout and a loss to the defendant in the amount of $1,500.00, the plaintiff advanced the sum of $9,000.00 on August 18, 1987, by wiring that sum to the defendant to cover her bank account. Of the amount wire transferred, $8,770.00 was sent by Ms. Audette to Powers Securities to pay for the purchased stock.
Between August 18, 1987 and December of that year, several trades took place where stocks were sold, proceeds remitted to the defendant and she sent sums of money to pay for trades on her behalf. On 10th of November, the plaintiff wire transferred $19,000.00 to the defendant to cover the purchase of Vet Line securities and Antigenics, of the amount sent $17,630.00 was sent to Powers Securities to pay for the purchased stock.
The plaintiff testified that the sums so advanced were to allow the defendant to profit from the purchase of these securities but the principal was to be returned to him or become joint property upon their marriage. In the interim, during August of 1987, the plaintiff proposed marriage, the defendant accepted and the parties announced their engagement.
In January, the plaintiff sent the defendant a check in the amount of $5,700.00.
In July of 1988, the plaintiff sent the defendant a check in the amount of $1,592.00.
In the period between August 1987 and March of 1988, the parties saw each other on alternating weekends, travelled Florida and Hawaii and the plaintiff purchased gifts for the defendant including a fur coat, diamond earrings and paid for other expenses the defendant had incurred.
In March of 1988, the parties had an argument involving their respective viewpoints on the relationship and the defendant returned to Connecticut. CT Page 3328
The parties did meet, however, on several occasions to try to reconcile and the parties vacationed in Florida in July of 1988. The parties concluded that their relationship could not be reconciled and they concluded any planning of a marriage.
In July of 1988, the plaintiff sent the defendant $14,194.00 from the proceeds of a sale in her stock account and $23,980.00 in January of 1989. Again, the proceeds of the sale of the balance of shares in her account.
FINDINGS
The court finds that the sum of $8,770.00 of the $9,000.00 sum sent to the defendant on August 18, 1987 was not a gift but was advanced to the defendant in order to prevent a stock liquidation and a charge back to the account.
The court finds that the sum of $17,630.00 of the $19,000.00 wired to the defendant was an advance from the plaintiff in order to allow the defendant to purchase two stock issues so a potential profit could be realized.
The stock account was set up for the defendant so she could trade on her own behalf. The plaintiff also suggested to the defendant that he would make good from his own resources for any losses she would suffer from the investment of her monies in any of the stocks he suggested she purchase.
At the time the advances were made the parties were engaged to be married and implicitly trusted each other judgement [judgment].
The court finds the $5,700.00 payment to the defendant represented profits realized on stock purchases, reimbursement for expenses the defendant had incurred on the behalf of both herself and the plaintiff, some living expenses of the defendant including utilities, condo charges, and other expenses. No position of this was an advance for investments.
The court finds the $1,592.00 constituted reimbursement for expenses for airplane travel.
The court finds that the defendant received by way of funds from the liquidation of her stock account $38,174.00, the proceeds being paid in two installments, one of $14,194.00 and CT Page 3329 the second in the amount of $23,980.00. which the defendant subsequently deposited into her own accounts.
Accordingly, the court finds that the defendant has been unjustly enriched in the amount of $26,400.00 of which sum $2,000.00 was previously paid by the defendant to the plaintiff and the count orders that judgment enter for the plaintiff in the amount of $24,400.00.
ANDRE M. KOCAY JUDGE, SUPERIOR COURT